IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD COLEMAN, | : | |
| Plaintiff, | : | |
| | : | 1:16-cv-0545 |
| v. | : | |
| | : | Hon. John E. Jones III |
| DOCTOR EDINGER, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**February 24, 2017**

## I. BACKGROUND

Plaintiff Ronald Coleman ("Coleman"), a federal inmate formerly incarcerated in the Special Management Unit ("SMU") at that United States Penitentiary at Lewisburg, Pennsylvania, commenced this *Bivens* action on March 30, 2016.[1] (Doc. 1). Named as Defendants are Dr. Andrew Edinger ("Dr. Edinger"), Physician's Assistants Jodi Jordan ("Jordan") and Francis Fasciana ("Fasciana"), and "PA John Doe 1-2".[2] Therein, Coleman alleges that Defendants

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

[2] The United States of America, who is not named as a defendant in Coleman's complaint, appears on the docket as a defendant. All indications are that this occurred when the United States Attorney's Office, who was seeking authorization to represent the individually named defendants, 28 C.F.R. §50.15, erroneously filed a motion (Doc. 11) for an enlargement of time

were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment rights.

Presently pending is a motion (Doc. 16) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed on July 18, 2016, on behalf of Defendants, Dr. Edinger, and Physician's Assistants Jordan and Fasciana. For the reasons set forth below, the motion to dismiss will be denied and the motion for summary judgment will be granted.

With respect to the "PA John Doe 1-2", because he was unable to be identified, he was not served. However, the complaint against him will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. SCREENING PURSUANT TO 28 U.S.C. §1915(e)(2)

### A. Standard of Review

Because Coleman is proceeding *in forma pauperis*, the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e)(2). Section 1915(e)(2) states, in pertinent part, "the court shall dismiss the case at any time if the court determines that (B) the action . . . (ii) fails to state a claim on which relief may be granted. . . ." 28 U.S.C. §1915(e)(2)(B)(ii). The

---

pursuant to Federal Rule of Civil Procedure 6(b) on behalf of the United States to respond to the complaint. Consequently, the United States will be terminated as a defendant.

applicable standard of review for the failure to state a claim provision is the same as the standard for a motion pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson*, 334 F. App'x , 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A district court ruling on a motion to dismiss generally "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC* Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing Iqbal, 556 U.S. at 679); *see also* 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; Fed. R. Civ. P. 8(a)(2).

**B. Allegations of the Complaint**

Coleman alleges that he sustained a serious injury to his right finger and that the medical staff at USP-Lewisburg rendered inadequate medical care. "PA John Doe 1-2" is only named in the caption of the complaint. He is not named in the body of the complaint.

**C. Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id*.; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under §1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." *Id.* In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

Coleman fails to allege that "PA John Doe 1-2" was personally involved in the alleged denial of adequate medical care. In fact, the complaint is completely

devoid of allegations against "PA John Doe 1-2." The complaint against this individuals is therefore subject to dismissal.

**D. Leave to Amend**

The Court recognizes that the sufficiency of this *pro se* pleading must be construed liberally in favor of Coleman, even after *Iqbal*. *See Erickson v. Pardus*, 551 U.S. 89 (2007). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). Consequently, a complaint should not be dismissed with prejudice for failure to state a claim without granting leave to amend, "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). A careful review of the complaint dictates that Coleman, even affording him all the liberalities that accompany his *pro se* status, fails to state a claim against "PA John Doe 1-2." Further, in light of the summary judgment discussion *infra*, affording him leave to amend would be futile.

## II. RULE 12(b)(1) MOTION TO DISMISS

### A. Standard of Review

A Rule 12(b)(1) motion challenges the power of a federal court to hear a claim or case. *See Petruska v. Gannon Univ*., 462 F.3d 294, 302 (3d Cir.2006). Such a motion may allege two distinct types of jurisdictional defects. *Id.*; *see* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.2004). " 'In sum, a facial attack 'contests the sufficiency of the pleadings,' [*In re Schering Plough*], 678 F.3d at 243, 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.' " *Constitution Party of Pa*., 757 F.3d at 358 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)).

### B. Allegations of the Complaint

Coleman, at all times relevant, a federal inmate at USP-Lewisburg, alleges in his opening paragraph that he is "[f]iling this civil rights litigation pursuant to 28 U.S.C. 1331(A) and *Bivens v. Two Unknown Named Agents*, 403 U.S. 388 (1971). And those rights afforded every citizen *via* the U.S. Constitution…." (Doc. 1, p. 1). In his next paragraph, he alleges that Defendants were deliberately indifferent to his serious medical needs, *i.e.*, the treatment of his injured right "pinky" finger. (*Id.* at 2, 3).

### C. Discussion

It appears that Defendants are lodging a facial attack to subject matter jurisdiction as they are specifically challenging the sufficiency of the factual allegations contained in the complaint. (Doc. 18, p. 24). However, as stated in footnote 1, *supra*, *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), established that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). Clearly the Court has jurisdiction over Coleman's complaint. Defendants' Rule 12(b)(1) motion will therefore be denied.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material

facts"); *Wooler v. Citizens Bank*, 274 F. App'x. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**B. Statement of Material Facts**

"A motion for summary judgment filed pursuant to Federal Rule of Civil Procedure FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." *See* L.R. 56.1. The opposing party shall file a separate statement of the material facts as to which it is contended that there exists

a genuine issue to be tried. *Id.* "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." *Id.* Defendants filed their statement of material facts (Doc. 17) and supporting brief (Doc. 18) on July 18, 2016. Coleman opposed the motion on August 5, 2016, and Defendants filed a reply (Doc. 20) on August 18, 2016. On October 20, 2016, Coleman filed a sur-reply (Doc. 23). On October 31, 2016, an Order (Doc. 24) entered directing Coleman to file a statement of material facts responding to Defendants' statement in accordance with the Local Rules. He was cautioned that his failure to do so would result in Defendants' statement of material facts being deemed admitted. (*Id.*) Coleman failed to file a statement of material facts. Therefore, all facts contained in Defendants' statement are deemed admitted.

On February 13, 2015, Coleman and a number of inmates engaged in a mass demonstration during which Coleman barricaded himself in his cell and refused staff orders. (*Id.*) In order to quell the disturbance, a variety of less than lethal chemical munitions were administered. (*Id.* at 6). Coleman sustained an injury to his right fifth finger and his right thigh. (*Id.*) The injuries were documented during decontamination; Coleman was sent directly to the health services department ("health services") for treatment. (*Id.* at 7).

Upon his arrival at health services, Coleman complained of pain in his right fifth finger, wrist, and right thigh, and an inability to move his right fifth finger. (*Id.* at 8, 9). He was treated by Dr. Edinger who noted that he had a wide laceration on his finger, but that he had good capillary refill which indicated good blood flow. (*Id.* at 2, 10). He cleaned and numbed the finger, applied internal and external sutures, applied an antibiotic ointment, and dressed the wound. (*Id.* at 12). He also prescribed an antibiotic to avoid infection and ordered daily dressing changes. (*Id.* at 13). Coleman also sustained a circular abrasion with burned edges to the right, anterior thigh, which was cleaned and dressed. (*Id*. at 14).

From February 14, 2015, through February 19, 2015, Coleman was seen daily in health services for wound care and dressing changes. (*Id.* at 15). On each of these dates he demanded pain medication to alleviate numbness in the finger, despite having been advised that pain medication would not resolve the numbness. (*Id.* at 16-21). On each visit, it was noted that his wound was healing well and presented no signs of infection. (*Id.* at 21). Dr. Edinger saw Coleman on February 19, 2015, and reported that his finger was healing well. (*Id.* at 22). The following day, Dr. Edinger removed the sutures and documented that he would recheck Coleman's finger the following week. (*Id.* at 23).

On February 23, 2015, Dr. Edinger saw Coleman and observed that he was able to bend his finger and had no signs of infection. (*Id.* at 24). Coleman was given antibiotic ointment and dressings, directed to clean the wound with soap and water, change dressings daily, and notify health services immediately if signs of infection occurred. (*Id.* at 25).

On February 26, 2015, Defendant Physician's Assistant Jordan fielded Coleman's request for more pain medication. (*Id.* at 3, 26). Coleman complained of decreased mobility and tingling, but had no signs of infection in his finger. (*Id*. at 27). Jordan prescribed ibuprofen and educated him on slowly exercising his finger to increase range of motion. (*Id.* at 28).

On March 6, 2015, Jordan noted that the wound was healing well, but it remained swollen. (*Id.* at 29). He ordered an x-ray to rule out fracture of the finger. (*Id.* at 29, 30). The x-ray revealed a non-displaced fracture in Coleman's finger; he was immediately provided a wood splint secured by tape. (*Id.* at 31). Jordan continued the pain reliever prescription and requested a referral to an orthopedic surgeon. (*Id.* at 32).

On March 11, 2015, Coleman was seen by an orthopedic surgeon, who recommended that he continue wearing the splint until March 16, 2015, that he begin range of motion exercise after removal of the splint, and that he receive a

follow-up x-ray in four to six weeks. (*Id.* at 33). On March 12, 2015, Coleman was seen by Defendant Physician's Assistant Fasciana who ordered Meloxicam for pain and a follow-up x-ray. (*Id.* at 4, 34). On March 19, 2015, when Coleman returned the wood splint to health services, he was encouraged to perform range of motion exercises. (*Id.* at 35). Coleman's follow-up x-ray showed no significant change and indicated that the fracture was healing. (*Id.* at 36).

On April 8, 2015, Coleman was again seen by the orthopedic surgeon, at which time the surgeon noted that, although there was slightly decreased flexion and sensitivity in the finger, the x-ray showed the fracture was healing. (*Id.* at 37). The surgeon recommended a round of Prednisone, range of motion exercises as tolerated, and follow-up as needed. (*Id.* at 38).

Defendant Fasciana ordered a round of Prednisone on April 10, 2015. (*Id.* at 39). On June 8, 2015, Jordan prescribed 300 mg of Gabapentin twice daily to treat Coleman's continued complaints of numbness and cold sensation in his finger. (*Id.* at 40). On July 20, 2015, following approximately six weeks at the initial dosage, Jordan increased the Gabapentin to 600mg twice daily. (*Id.* at 42).

On an October 6, 2015 health services visit, Coleman complained of lower back pain, pain in his right arm, and right finger. (*Id.* at 44). Jordan prescribed ibuprofen and indicated that consideration would be given to performing an

electromyogram (“EMG”) to assess nerve damage for his back and finger pain. (*Id.* at 45). On October 15, 2015, Jordan increased the Gabapentin to 900 mg twice daily and ordered the EMG. (*Id.* at 47). The EMG was performed on January 25, 2016, and it revealed some ulnar nerve damage to Coleman’s right fifth finger. (*Id.* at 49). Based on the EMG results, the neurologist recommended continued symptomatic treatment and range of motion exercises. (*Id.* at 50).

The 2016 BOP National Formulary deleted Gabapentin from the list of available drugs. (*Id*. at 51). Coleman’s Gabapentin prescription was tapered on March 17, 2016, and, on March 29, 2016, Coleman agreed to a trial of Duloxetine to treat his pain. (*Id.* at 51, 52). Coleman has made no complaints since March 29, 2016, and he continues to be treated by health services as required. (*Id.* at 53).

**C. Discussion**

For the delay or denial of medical care to rise to a violation of the Eighth Amendment’s prohibition against cruel and unusual punishment, a prisoner must demonstrate “(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious.” *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official “knows of and disregards an excessive risk to inmate health or safety.” *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

Coleman contends that Defendant Edinger denied him basic care such as pain reliever and ice for swelling, and ignored the swelling in his finger and his complaints of lack of mobility in his finger. (Docs. 19, 23). He further takes issue with the decision not to order an x-ray until "after almost a month of complaining," and states that several sick call slips were ignored by Defendants Jordan and Fasciana. (Doc. 19, p. 1).

Coleman is clearly dissatisfied with the decisions made with regard to the treatment of his finger. However, the record demonstrates that he consistently received adequate medical attention from Defendants Edinger, Jordan and Fasciana. Each time he received treatment from Defendants, his concerns were addressed. Treatment in the form of cleansing, application of sutures and the dressing of the wound was timely administered. Coleman received consistent wound care. On March 6, 2015, when symptoms suggested that the damage was greater than a laceration to the finger, an x-ray was ordered. When the March 9, 2015 x-ray revealed a fracture, Coleman was immediately fitted with a wood splint, prescribed pain medication and referred to an orthopedic surgeon. The orthopedic surgeon saw Coleman within two days of the referral and prescribed a treatment plan. All aspects of the treatment plan were followed, including the taking of a follow-up x-ray on March 31, 2015. Coleman was again seen by the orthopedic surgeon in April 2015. Again, all of the orthopedic surgeon's recommendations, including a recommended round of Prednisone, were implemented by Defendants. When Coleman's symptoms of numbness and discomfort persisted into June 2015, he was prescribed medication and, when the medication did not alleviate the symptoms, an EMG was performed to assess nerve damage. He was also referred to a neurologist who recommended continued

symptomatic treatment and range of motion exercises. These recommendations were followed.

No claim of deliberate indifference is made out where a significant level of care has been provided, as is the case here, and all that is shown is that the prisoner disagrees with the professional judgment of a physician. *Estelle*, 429 U.S. at 105–06, 107 (finding that “in the medical context, . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment”); *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir. 1997) (recognizing “well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of ‘deliberate indifference’ ”); *Durmer*, 991 F.2d at 67 (same). *See also Taylor v. Norris*, 36 F. App’x. 228, 229 (8th Cir. 2002) (finding that deliberate indifference claim failed because it involved a disagreement over recommended treatment for hernias and decision not to schedule a doctor’s appointment); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024–35 (7th Cir. 1996) (holding that an inmate’s disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993) (finding inmate’s mere disagreement with doctor’s informed decision to delay

surgery does not establish Eighth Amendment claim). Coleman must raise "more than a mere scintilla of evidence in [his] favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). He has failed to meet this burden. He fails to come forth with any credible evidence that would indicate that Defendants intentionally withheld medical treatment, *i.e.* denied him timely and appropriate treatment and, in doing so, inflicted pain or harm upon him. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *Rouse*, 182 F.3d at 197.

Courts will not second guess whether a particular course of treatment is adequate or proper. *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cnty. Jail*, 612 F.2d at 762). *See also, e.g., Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation); *Rush v. Fischer*, No. 09-9918, 2011 WL 6747392, at *3 (S.D.N.Y. 2011) ("The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs.").

Based on the foregoing, Defendants are entitled to an entry of summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. 16) pursuant to Federal Rule of Civil Procedure 12(b)(1) will be denied and Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, will be granted. Defendant "PA John Doe 1-2" will be to dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

A separate order will enter.